LEORA HOUGHTON & others *vs.* MARSHALL D. DICKINSON.

Hampshire.    September 17, 1907. — October 16, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Legitimacy.    Statute,* Construction.    *Descent and Distribution.*

Although St. 1853, c. 233, now R. L. c. 133, § 5, with regard to the legitimating of an illegitimate child upon marriage of his parents and acknowledgment by his father, since it modifies the common law, must be construed strictly, the construction adopted should advance, rather than defeat, the purpose of the Legislature.

The acknowledgment by the father, which is necessary under R. L. c. 133, § 5, to render an illegitimate child legitimate after the marriage of the parents, while it must be unambiguous, need not be by declarations, but may be by conduct.

A finding that an illegitimate child has been legitimated after the marriage of his parents by his father's acknowledging him as his child is warranted on evidence which tends to show that before his marriage with the child's mother the father consistently treated the child as his own and that after the marriage he continued to do so and that, in testifying as a witness at the trial of a suit by the child's mother for a divorce, he spoke of the child as his " boy."

PETITION filed in the Probate Court for the county of Hampshire June 7, 1906, by the administrator of the estate of Marshall D. Dickinson praying for leave to make a partial distribution and for a determination of the persons entitled to share therein.

On appeal to this court, the case was heard by *Morton*, J.   It appeared that the respondent Marshall D. Dickinson claimed to share in the distribution as a son of the intestate and that the other respondents contended that he was illegitimate and never had been acknowledged by the intestate as his son although, after his birth, his father and mother had been married.   The presiding justice ruled, subject to exception by the other respondents, that the intestate had acknowledged Marshall D. Dickinson as his son, made a memorandum of his findings of facts and reported the case for determination by the full court.

The facts are stated in the opinion.

*W. J. Reilley*, for the appellants.

*S. S. Taft*, for the appellee, was not called upon.

BRALEY, J.   By the common law the respondent, not having been born in lawful wedlock, was without inheritable blood and therefore would have been incapable of participating in the distribution of the estate of his putative father, who died intestate. 1 Bl. Com. (Sharswood's ed.) 459.   Until partially abrogated by St. 1832, c. 147, which permitted an illegitimate child upon the intermarriage of his parents and subsequent acknowledgment by his father to be recognized as an heir of legitimate children of the same parents, and by Rev. Sts. c. 61, § 4, which gave to him the further right of a lineal heir but still excluded him from any rights of inheritance by way of representation under either parent, the doctrine prevailed here from the earliest times.   It is, however, within the power of the State to prescribe that children born out of lawful marriage may under certain conditions become legitimate ; and, this exception having been subsequently removed by St. 1853, c. 253, now embodied by re-enactments in R. L. c. 133, § 5, since then a child thus born, but whose parents have subsequently intermarried and whose father acknowledges him as his offspring, succeeds to the status and corresponding legal rights enjoyed by legitimate children.   *Ross* v. *Ross*, 129 Mass. 243.   *In re Goodman's Trusts*, 17 Ch. D. 266.   The history of our statutory recognition of what may be termed the natural rights of innocent children who have no control over the circumstances attending their birth is traced in *Ross* v. *Ross*, 129 Mass. 243, 258, 259, and the reasons which may be presumed to have influenced legislative action in the passage of the

last statute are very fully stated in *Monson* v. *Palmer*, 8 Allen, 551, 556. In terms the statute whereby our law relating to legitimation was thus brought into harmony with the humane spirit of the civil law and of modern times and freed from the policy of the early common law, which was founded upon reasons growing out of the feudal system, is " as broad and comprehensive as the language affords." See *Ross* v. *Ross*, *ubi supra; Stevenson* v. *Sullivant*, 5 Wheat. 207, 262, note; Kent Com. 209, 210. If the statute, because it modifies the common law, is to be strictly construed, yet the construction adopted should advance, rather than defeat, the purpose of the Legislature. *Sanford* v. *Marsh*, 180 Mass. 210, 211. *Palmer* v. *Monson*, *ubi supra*. *Rogers* v. *Nichols*, 186 Mass. 440, 443.

The qualifying requirements for legitimation are the intermarriage of the parents, and subsequent acknowledgment of the child as his offspring by the father. *Brock* v. *State*, 85 Ind. 397. It having been determined in the case of *Dickinson* v. *Dickinson*, 167 Mass. 474, that the marriage was valid, the appellants insist that the facts reported are insufficient as matter of law to support the finding of acknowledgment. While no formal acts are prescribed by the statute which shall constitute the acknowledgment required, undoubtedly the recognition of parentage must be unambiguous. But, if so, such recognition may be shown by conduct as well as by declarations, and, upon referring to the subordinate findings the contention urged is manifestly without foundation. During their engagement, and under a promise of marriage, intercourse took place between the decedent and the respondent's mother and she became pregnant. Upon knowledge of her pregnancy he at first refused to perform his contract, but neither then nor at the birth of the child did he deny his paternity, but declared him to be his own and consented that he should be named after him. In the short interval which followed before marriage, he not only frequently visited the home of the parents of the boy's mother and spoke of getting married to her, and of keeping house for the benefit of the " boy," but is found in other ways to have recognized the respondent's paternity. After marriage the respondent was received and treated as his son, and although the period of matrimonial cohabitation was short and there was no

acknowledgment of parenthood beyond the limits of his own family and that of his parents with whom he lived, to what extent, if at all, those facts affected the weight to be given to the evidence was solely for the presiding judge to decide. *Heywood* v. *Stiles,* 124 Mass. 275. *Wylie* v. *Cotter,* 170 Mass. 356. There was, moreover, a declaration or acknowledgment of a public nature when, as a witness in the divorce proceedings instituted by his wife, he stated that, upon his departure from the State, she remained taking care of his " boy " and of her parents. It seems to have been substantially uncontroverted that, during the time elapsing after knowledge of the pregnancy and until the decedent permanently returned to this Commonwealth, he declared and admitted the respondent to be his son. In the face of the contrary statements made after his return, which may have tended to support the position of the appellants, the facts to which we have adverted in describing the paternal relations and recognition clearly warranted the conclusion expressed by the principal finding that the statute had been fully satisfied. *American Malting Co.* v. *Souther Brewing Co.* 194 Mass. 89, 102. *Wylie* v. *Cotter, ubi supra. Griffin* v. *Cunningham,* 183 Mass. 505, 509. *Metheny* v. *Bohn,* 160 Ill. 263. *Gaines* v. *New Orleans,* 6 Wall. 642, 670.

Having been lawfully legitimated the legal relation of parent and child was created, and consequently he takes the estate as his father's heir. R. L. c. 133, § 1, cl. 1 ; c. 140, § 3, cl. 2.

*Decree of Probate Court affirmed.*