VIOLA M. VALLIN, administratrix, *vs.* ALICE FALT
BONDESSON & others.

Berkshire.    December 6, 1963. — February 4, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Descent and Distribution.    Illegitimacy.*

Upon the death intestate of an illegitimate woman, leaving no husband or
issue, after the death of her legitimate mother, other illegitimate chil-
dren of the intestate's mother surviving the intestate were entitled to
the intestate's estate under G. L. c. 190, §§ 5, 6, to the exclusion of
legitimate maternal first cousins of the intestate surviving her.

PETITION for instructions filed in the Probate Court for
the county of Berkshire on September 13, 1962.

The case was heard by *Hanlon, J.*

*Allan van Gestel* for the appellants.

*George B. Crane* for the appellees.

SPIEGEL, J. · This is a petition by the administratrix of
the estate of Ada Allard for instructions as to who are the
proper next of kin of the decedent and entitled to distribu-
tion of her estate.    The respondents named in the petition
"represent various family groups of various relationships
to [the] decedent."

The case was heard on a statement of agreed facts.    The
judge entered a decree ordering "that the balance in said
estate . . . should be paid in equal shares to Alma E. Rask
Jonassen, Ingeborg B. Rask Pedersen and Karl V. Rask
[three of the nine named respondents], children of said
decedent's mother."    The remaining six named respond-
ents appealed from the decree.

Ada Allard died on December 31, 1957, intestate.    The
decedent married one Frederick Allard on May 4, 1907.
He died on October 26, 1956.    There is no record of any
children ever having been born of this marriage.    There is

no record of any other marriage of the decedent nor is there any record of any children being born to the decedent. She came to this country from Sweden as a "foster child" of Sven Olsson and Elna Lund. No "formal legal adoption" of the decedent was ever made by Sven Olsson and Elna Lund in Sweden. "Adoption records in the Commonwealth of Massachusetts, the State of Rhode Island and the State of New Hampshire reveal that no legal adoption was ever made of the decedent by Sven Olsson and Elna Lund in this country." The decedent was the daughter of Christina Rask and was born in Sweden on March 17, 1884. "There is no evidence that the decedent's mother was married at the time of the birth of the decedent, nor is there any evidence that the decedent's mother [was] ever married." She was a daughter of the marriage of Samuel F. Rask and Fredrika Hammarlund, who had four other children, Johanna, Carl, Gustaf, and Adolf Rask, also known as Adolf Falt. Only Johanna and Adolf lived to maturity, and they both predeceased the decedent.

Adolf married one Anna Olsdotter on December 31, 1893. Six children were born of this marriage, three of whom survived the decedent. These are Alice Falt Bondesson, Albin E. Falt, and Agda G. Falt Nelsson, maternal first cousins of the decedent and appellants herein.

Johanna married one Lars C. Pedersen on July 25, 1880. Three children were born of this marriage and all are still living. These children are Carl W. Pedersen, Ellen D. Pedersen, and Emanuel H. Pedersen, also appellants.

Christina Rask, mother of the decedent, gave birth to eight other children of whom three survived the decedent. They are Karl Vilhelm Rask, Ingeborg Beata Rask Pedersen, and Alma E. Rask, the appellees. It has not been possible to determine who was the father of any of the children of the decedent's mother.

The sole issue before us is whether the balance of the estate should be distributed to the intestate's illegitimate brother and sisters, as ordered by the judge below, or to the intestate's legitimate next of kin.

The appellants contend and the appellees concede that at common law an illegitimate child could inherit from no one. This contention is historically correct. *Cooley* v. *Dewey,* 4 Pick. 93, 94. *Kent* v. *Barker,* 2 Gray, 535, 536. *Sanford* v. *Marsh,* 180 Mass. 210, 211. *Plymouth* v. *Hey,* 285 Mass. 357, 359. Even as early as 1826 Chief Justice Parker, while explaining the common law rule, commented that under it "the punishment usually falls upon the innocent." *Cooley* v. *Dewey, supra,* 95. It is impossible to say what course the common law might have taken on issues concerning the rights of illegitimate persons in lieu of action by the Legislature which, since 1828, has enacted statutes to ameliorate the severity of the common law rule. The statute applicable to the present case, if any, is G. L. c. 190, §§ 5 and 6. The appellees contend in essence that under this statute they are entitled to inherit from the decedent; the appellants deny that the statute has this effect and maintain that under the common law rule, which is still in force, they are the sole heirs.

General Laws c. 190, §§ 5 and 6, reads as follows: "5. An illegitimate child shall be heir of his mother and of any maternal ancestor, and the lawful issue of an illegitimate person shall represent such person and take by descent any estate which such person would have taken if living." "6. If an illegitimate child dies intestate and without issue who may lawfully inherit his estate, such estate shall descend to his mother or, if she is not living, to the persons who would have been entitled thereto by inheritance through his mother if he had been a legitimate child." It is the appellants' contention that under c. 190, § 5, an illegitimate child can inherit only from his mother or a maternal ancestor in direct ascending line. In support of this proposition they cite *Pratt* v. *Atwood,* 108 Mass. 40, 42, and *Haraden* v. *Larrabee,* 113 Mass. 430, 432. The appellants further argue that since the appellees, being illegitimate, cannot inherit from their illegitimate sister under c. 190, § 5, neither can they inherit from her under c. 190, § 6; this section, they contend, treats only with the rights of persons to in-

herit from illegitimates and does not expand the rights of illegitimates to inherit. The appellees argue that both sections should be read together to the effect that within the provisions of c. 190, § 5, they are persons who may inherit through the decedent's mother under c. 190, § 6. Since both the *Pratt* case, *supra,* and the *Haraden* case, *supra,* were decided before 1882, when G. L. c. 190, § 6, was enacted in substantially its present form,[1] the issue must be considered open to judicial interpretation.

The legislative history of c. 190, § 6, contains nothing to resolve the issue. The appellants contend that "[t]he deletion of the words 'the heirs at law of his mother' [the language used in a Senate version of what is now c. 190, § 6[2]] and the substitution therefor of 'the persons who would have been entitled thereto by inheritance through his mother' in House Bill No. 233[3] reveal the legislative intent." They would have us infer that the "change evidences a recognition and intent on the part of the General Court that this section of the law should not provide for any distribution of the property of an intestate illegitimate to persons who would not otherwise have been qualified as heirs." If we accept this part of the appellants' reasoning, we would be compelled to conclude that neither they nor the appellees are entitled to the intestate property since neither would "otherwise have been qualified as heirs" at common law. *Cooley* v. *Dewey,* 4 Pick. 93, 94. *Sanford* v. *Marsh,* 180 Mass. 210, 211. However, we are of opinion that a more likely purpose for the change was to avoid the confusion surrounding the word "heirs." See *First Safe Deposit Natl. Bank* v. *Westgate, ante,* 444, 447–451, 453, and the cases cited therein. In light of the technical and formal meanings that have been ascribed to the term "heirs," we are of opinion that the class of persons entitled to inherit under the House bill is, if at all different, larger

---

[1] See Pub. Sts. (1882), c. 125, § 4, and St. 1882, c. 132.

[2] See 1882 Senate Doc. No. 42.

[3] See 1882 House Bill No. 233.

than the class upon whom the Senate bill would have conferred rights of inheritance.

Whatever specific purposes may be ascribed to G. L. c. 190, § 6, it seems clear that its general purpose was to overrule in part the harsh common law distinctions between the rights of legitimate and illegitimate persons. See *Houghton* v. *Dickinson,* 196 Mass. 389, 390. The appellants argue that they, for no other reason than that of their legitimacy, are to be preferred over the decedent's brother and sisters in the distribution of her property. To give the statute this interpretation is to make the distinctions between legitimate and illegitimate even more inequitable and invidious than those imposed at common law. Under this interpretation legitimate persons would be fully entitled to inherit from their illegitimate maternal relatives, but the latter would still be unable to inherit from the former. We believe that such an interpretation should be avoided as far as possible. In the case of *Sanford* v. *Marsh, supra,* a reason that was given for not allowing the appellants to prevail was that "the intestate in this case could not have inherited from the appellants if she had survived them." Under our law it is clear that the decedent could not have inherited from the appellants had she survived them. *Cooley* v. *Dewey, supra. Haraden* v. *Larrabee, supra.* Since this is the case, we see no reason for them to prevail over the appellees who advance a proposition of law under which they and the decedent hypothetically would have enjoyed reciprocal rights to inherit from each other.

We are of opinion that on the plain language of G. L. c. 190, §§ 5 and 6, the appellants are not entitled to prevail. Chapter 190, § 5, says that an "illegitimate child shall be [the] heir of his mother." As heirs, illegitimate children are persons entitled to inherit from illegitimate sisters and brothers by inheritance *through* their mother within the language of G. L. c. 190, § 6. This definition of "through" is consistent with that given in *Phelan* v. *Conron,* 323 Mass. 247, 253. In that case we said that when one "inherits property from a third person by reason of the relationship

of that person and himself to the parent he takes 'through' the parent." We are also satisfied that the sole purpose of the last clause, "if he had been a legitimate child," is to permit legitimate maternal relatives to inherit where they are nearest to the intestate under the laws of descent. See *Parkman v. McCarthy,* 149 Mass. 502, 503–504.

The appellants argue that since this statute is in derogation of the common law it is "to be strictly construed and . . . [its] scope and application strictly limited." The purpose of this statute, however, is to ameliorate the very rule which the appellants want us to apply. "If the statute, because it modifies the common law, is to be strictly construed, yet the construction adopted should advance, rather than defeat, the purpose of the Legislature." *Houghton v. Dickinson, supra,* 391.

The appellants maintain that this reading of c. 190, § 6, "would give greater rights of inheritance to an illegitimate when inheriting from another illegitimate than he would have when inheriting from a legitimate person." As long as the common law rule survives, even as modified by statute, this contention is undoubtedly correct. Nevertheless, we believe that our construction of the statute is in keeping with the modern concept of justice and achieves a far more equitable result than a contrary interpretation would accomplish.

Accordingly, we hold that under the laws of descent and distribution, the decedent's heirs are her illegitimate brother and sisters. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*Decree affirmed.*