ALLYSON MARIE LOWELL[1] vs. SANDRA J. KOWALSKI,
administratrix.[2]

Worcester. April 9, 1980. — May 14, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Constitutional Law,* Equal protection of laws, Equal Rights Amendment.
*Practice, Civil,* Parties. *Statute,* Construction. *Illegitimate Child.*

An illegitimate child had standing to raise a constitutional challenge to
the sex-based classification in G. L. c. 190, § 7. [664-668]
The State has a compelling interest in distinguishing the right of an il-
legitimate child to inherit from his or her natural father from the right
of such a child to inherit from his or her natural mother. [668-669]
The requirement of intermarriage expressed in G. L. c. 190, § 7, violates
the Equal Rights Amendment to the Massachusetts Constitution.
[669-670]

CIVIL ACTION commenced in the Probate Court for the
county of Worcester on June 28, 1978.

The case was heard by *McLellan,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*David A. Wojcik* for the plaintiff.

*Allen Rubin,* for the defendant, submitted a brief.

*Francis X. Bellotti,* Attorney General, *Linda-Marie Irvin,*
Assistant Attorney General, for the Attorney General,
amicus curiae, submitted a brief.

WILKINS, J. This action was commenced in a Probate
Court seeking a declaratory judgment that the plaintiff Al-
lyson Marie Lowell is the daughter of Francis R. Kowalski
(Kowalski) and is entitled to share in the distribution of the

[1] By her mother and next friend, Donna Lowell.

[2] Administratrix of the estate of Francis R. Kowalski.

assets of Kowalski's estate.   Kowalski died shortly before the plaintiff's birth.

The judge found that Kowalski was the father of the plaintiff, that her parents never were married to each other, and that Kowalski had never been adjudicated to be her father under G. L. c. 273, § 12.   The parties stipulated that Kowalski had acknowledged orally and in writing that he was the plaintiff's father.   The judge ruled that under G. L. c. 190, § 7, the plaintiff was not entitled to inherit from her intestate father, and that § 7 did not deny the plaintiff's constitutional right to equal protection of the laws under art. 1 of the Declaration of Rights of the Constitution of the Commonwealth or under the Fourteenth Amendment to the United States Constitution.   We transferred the plaintiff's appeal here on our own motion and now reverse that judgment.

The statutory right of an illegitimate child to inherit from his or her natural father differs from the statutory right of such a child to inherit from his or her mother.   Under G. L. c. 190, § 5,[3] an illegitimate child is an heir of his or her mother and may inherit from and through her in the same manner as a legitimate child.   On the other hand, under G. L. c. 190, § 7,[4] an illegitimate child may be treated as the legitimate child of his or her natural father, and thus inherit from him, only if the parents have intermarried and if the father either has acknowledged the child as his or has been adjudged to be the child's father in a proceeding under G. L. c. 273.

The administratrix of the father's estate, the Attorney General in his amicus brief, and the judge below have pro-

---

[3] General Laws c. 190, § 5, reads as follows: "An illegitimate child shall be heir of his mother and of any maternal ancestor, and the lawful issue of an illegitimate person shall represent such person and take by descent any estate which such person would have taken if living."

[4] General Laws c. 190, § 7, as amended by St. 1943, c. 72, § 1, reads as follows: "An illegitimate child whose parents have intermarried and whose father has acknowledged him as his child or has been adjudged his father under chapter two hundred and seventy-three shall be deemed legitimate and shall be entitled to take the name of his parents to the same extent as if born in lawful wedlock."

posed a construction of § 7 that would eliminate the require-
ment of intermarriage of the parents as a precondition to
inheritance from the natural father in the case of an adjudi-
cation of paternity. They read § 7 as allowing inheritance if
there were either (a) parental intermarriage and acknowl-
edgment, or (b) an adjudication of paternity. Their read-
ing of § 7 does violence to the plain words of the statute.
Relying on their illogical construction of § 7, the advocates
of the statute argue that this court could hold, consistent
with decisions of the United States Supreme Court, that § 7
does not violate the equal protection requirements of the
Fourteenth Amendment.[5]

In two recent decisions, the United States Supreme Court
has addressed the right of an illegitimate child to inherit
from his or her natural father. The Supreme Court, by a
five-to-four vote, held invalid, on equal protection grounds,
an Illinois statute that limited an illegitimate's right to in-
herit from her natural father to a situation in which the
natural parents had intermarried and the father had acknowl-
edged the child as his. *Trimble* v. *Gordon*, 430 U.S. 762,
771 (1977). Conversely, that Court, again by a five-to-four
vote, upheld a New York statute that limited an illegitimate
child's right to inherit from her natural father to instances
in which there had been a judicial determination of paterni-
ty. *Lalli* v. *Lalli*, 439 U.S. 259, 275-276 (1978).[6]

From these decisions, the argument is made that § 7, con-
strued to allow inheritance when there has been a determi-
nation of paternity regardless of intermarriage, is constitu-
tional. We need not resolve this question because (1) the
plain words of § 7 do not support that interpretation, and
(2) the requirements of the Equal Rights Amendment
(ERA) to the Massachusetts Constitution are more stringent

---

[5] No argument is made here that the statute violates the equal protec-
tion rights of illegitimate children under the State Constitution, except as
to the alleged violation of art. 1 of the Declaration of Rights because of
unfair discrimination based on sex.

[6] Mr. Justice Powell was the author of both opinions and was the only
judge to vote with the majority in both cases.

than the Fourteenth Amendment equal protection requirements.[7] We add that, if we were to consider § 7 on Federal equal protection grounds, we would expect that intermarriage as a precondition of parental acknowledgment would be unconstitutional under the reasoning of the *Trimble* case (see *Lalli* v. *Lalli, supra* at 266-268) and that acknowledgment of paternity alone might be an acceptable condition under the *Lalli* case (*id.* at 272 n.8) However, to accept a result that is constitutional just because it happens to coincide with the fact patterns of cases that have reached the Supreme Court might not be the fair and appropriate way to interpret § 7. A better solution would be to save such portions of § 7 as are constitutional or to fashion a new common law rule in the face of the unconstitutionality of § 7. Because of the controlling importance of the Massachusetts ERA, we turn to our primary consideration, whether the statutes concerning the inheritance rights of illegitimate children violate the State Constitution.

A statutory classification based on sex is subject to strict judicial scrutiny under the State ERA and will be upheld only if a compelling interest justifies the classification and if the impact of the classification is limited as narrowly as possible consistent with its proper purpose. *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Ass'n,* 378 Mass. 342, 354 (1979). *Opinion of the Justices,* 374 Mass. 836, 838 (1977). *Commonwealth* v. *King,* 374 Mass. 5, 21 (1977). We conclude that the State does have a compelling interest in distinguishing the right of an illegitimate child to inherit from his or her natural father from the right of such a child to inherit from his or her natural mother, but that the statutory pattern is not properly confined to the fulfilment of that interest. Accord *Trimble* v. *Gordon, supra* at 770-773. Cf. *Succession of Brown,* 379 So. 2d 1172, 1177

---

[7] In 1976, the people approved art. 106 of the Amendments to the Constitution of the Commonwealth which amended art. 1. of the Declaration of Rights to read, in part, as follows: "Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

(La. App. 1980) (statute held invalid under State ERA that prohibits discrimination on the basis of birth).

Clearly, to differentiate between an illegitimate child's right to inherit from his or her natural mother (under § 5) and that child's right to inherit from his or her natural father (under § 7) is to establish a classification based on sex. Cf. *Caban* v. *Mohammed*, 441 U.S. 380, 388 (1979) (statute allowing unwed mother, but not unwed father, to block adoption of natural child created a sex-based classification that violated the equal protection clause of Fourteenth Amendment). Illegitimate children are included among the heirs of their mothers in all instances but are included among the heirs of their fathers only in limited circumstances.

When a person is adversely affected by the consequences of a statutory classification based on sex, that person may have standing to raise a constitutional challenge to that classification. The plaintiff in this case is asserting more than an adverse financial impact; she is litigating the issue of her status in the community. Such a "plaintiff's interest is not simply economic. [The p]laintiff has a separate, identifiable interest in not being treated by her government as a second-class person." *Eskra* v. *Morton*, 524 F.2d 9, 12-13 (7th Cir. 1975) (Stevens, J.). Thus, we hold that this plaintiff has standing to challenge the sex-based classification in § 7. Cf. *Truax* v. *Raich*, 239 U.S. 33, 38-39 (1915) (allowing an alien to challenge a statute prohibiting his employer from retaining more than a certain proportion of alien employees).

We do not regard the statutory discrimination as being directed solely against natural fathers so that only they, and not their illegitimate children, properly may contest it. This is not just a case of a person asserting the constitutional rights of a third party.[8] The plaintiff is challenging the dis-

---

[8] Because all the Federal requirements of third party standing are met in this case, the plaintiff could properly assert her father's right to have his intestate estate pass to his issue. The plaintiff obviously suffers an injury by virtue of her disinheritance. Moreover, the father cannot now come into court to assert his own rights, and, because the plaintiff's injury is in-

criminatory impact of a sex-based classification which offers to an illegitimate child different and reduced prospects of inheritance from his or her father than from his or her mother. On the facts before us, this classification denies the plaintiff any right to inherit from her natural father, whereas, if the deceased parent had been female, the plaintiff would have inherited from her natural mother.

We consider then whether there is any compelling State interest in support of distinguishing between the right of an illegitimate child to inherit from his or her natural father and such child's right to inherit from his or her natural mother. The statutes extending rights of inheritance to illegitimate children were enacted to give rights to illegitimate children that they did not have at the common law. At common law an illegitimate child could inherit from no one. *Vallin* v. *Bondesson,* 346 Mass. 748, 750 (1964). If an illegitimate child's status as an heir could be ascertained with equal ease as to each natural parent, no statutory distinction between the two situations would be needed or could be justified. There is a difference, however, between establishing paternity and establishing maternity. See *Lalli* v. *Lalli,* 439 U.S. 259, 268-271 (1977). A distinction between rights to inherit from a natural father and rights to inherit from a natural mother may properly be based on the greater difficulty of proving paternity than of proving maternity.

In *Commonwealth* v. *MacKenzie,* 368 Mass. 613 (1975), a case that involved a proceeding to establish the defendant's paternity, we concluded that a statutory distinction between paternity and maternity of an illegitimate child rested "on more than a sex-based classification." *Commonwealth* v. *MacKenzie, supra* at 617-618.[9] The distinction

extricably bound up with her father's rights concerning the distribution of his intestate estate, she is certain to be an effective advocate of those rights. See *Singleton* v. *Wulff,* 428 U.S. 106, 112-118 (1976).

[9] That case was decided before the adoption of the State ERA, but we acknowledged the appropriateness of its analysis subsequent to the adoption of the State ERA. See *Attorney Gen.* v. *Massachusetts Interscholastic Athletic Ass'n,* 378 Mass. 342, 357-358 (1979).

reflected significant circumstantial differences between the fathers and the mothers of illegitimate children. "[B]ecause the woman carries and bears the child, the pressures of society make it nearly impossible for her successfully to deny parenthood or to avoid responsibility for the child. The father, on the other hand, because not visibly linked to the child, often is unaware of the tie or denies it, and thus the fact of his parenthood is more difficult to prove." *Id.* at 617.

In the case before us where the father is deceased, as was not the situation in the *MacKenzie* case, the problem of determining the truth and of avoiding the fraudulent claims is even more difficult. Thus, because the possibility of fraud is usually greater with respect to claims against the estate of a deceased man than against the estate of a deceased woman, we recognize that the State has a compelling interest in imposing a stricter standard for establishing an illegitimate child's right to inherit from its father than from its mother.[10]

The question then remains whether the statutory classification is as narrow in its impact as is possible, consistent with the purpose of avoiding fraudulent claims against the estate of a man who died intestate. We think it is not. An absolute requirement that the child's parents have intermarried is too broad. It would not pass constitutional muster even under the less strict equal protection standard of the Fourteenth Amendment. See *Trimble* v. *Gordon,* 430 U.S. 762, 771 (1977).

We accept a judicial adjudication of paternity as one appropriate method of establishing inheritance rights. If, however, judicial adjudication were the only permitted means of establishing those rights, the classification would be unconstitutionally restrictive because it would unnecessarily foreclose the rights of illegitimates who could convinc-

---

[10] We reject as an adequate compelling State interest any greater difficulty in an estate's representative identifying and giving notice to the illegitimate children of a man than of a woman. Notice by publication should be adequate as to persons whose alleged status is not known by the estate's representative.

ingly establish their parentage. An option limited to an adjudication of paternity would deny, for example, rights to a child whose natural father publicly and consistently acknowledged his child and did so in writing, perhaps even under oath.

In the case before us, it was established, based on a stipulation of the parties, that, on numerous occasions, the defendant's intestate acknowledged the paternity of the plaintiff orally and in writing. Where paternity is conceded, we see no justification for denying the right of a child to inherit from his or her natural father. The possibility of fraud is wholly absent. A statutory classification which denied an admitted illegitimate child of the deceased father any right to inherit from his estate would not serve the State's interest in avoiding fraudulent claims against the decedent's estate.

The effect of what we have decided is to strike down as unconstitutional the requirement of intermarriage expressed in § 7 and to give effect to the separate statutory elements of acknowledgment of paternity and of adjudication of paternity. In this way, we preserve as much of the legislative intent as is possible in a fair application of constitutional principles. See 2 C. Sands, Sutherland Statutory Construction § 44.18 (1973); *Commonwealth* v. *Baird,* 355 Mass. 746, 755-756 (1969), cert. denied, 396 U.S. 1029 (1970).

We leave to another case, if it should arise, the question whether, in a contested proceeding, proof of paternity may be made out in the absence of the father's written acknowledgment of his paternity (see for such an example, G. L. c. 273, § 15, as amended through St. 1979, c. 621, § 2), his sworn testimony to the same effect, or an adjudication of paternity under G. L. c. 273. See generally Annot., 33 A.L.R.2d 705 (1954). In light of the views expressed in this opinion, the Legislature may conclude that a revision of the statutes concerning the right of an illegitimate child to inherit from his or her natural father would be appropriate.[11]

---

[11] We note that two bills have been introduced in the Legislature concerning this issue. 1980 House Bill No. 711 has been passed to be engrossed; 1980 Senate Bill No. 1011 is pending.

The judgment is reversed and a new judgment shall be entered declaring that Allyson Marie Lowell is entitled to share in the distribution of the assets of the estate of Francis R. Kowalski.

*So ordered.*