CYNTHIA A. PAQUETTE vs. EVRIPIDES N. KOSCOTAS.

Middlesex.  March 13, 1981. — June 10, 1981.

Present: GRANT, CUTTER, & KASS, JJ.

*Illegitimate Child.  Probate Court,* Report.  *Constitutional Law,* Equal
Rights Amendment.

The illegitimate child of a decedent who had acknowledged the child as
    his during his lifetime, although not in writing, was entitled to status
    as next of kin and qualified for appointment as administratrix of her
    father's estate.  [53]
The rights of an illegitimate child of a father who died after the effective
    date of the Equal Rights Amendment to the Massachusetts Constitu-
    tion but prior to the decision in *Lowell* v. *Kowalski,* 380 Mass. 663
    (1980), were governed by the principles articulated in the *Lowell* deci-
    sion.  [53-54]
A judge of a Probate Court may report a case under G. L. c. 215, § 13,
    only if it has been "heard for final determination" so that entry of a
    final judgment may be ordered by the appellate court, or if there is a
    question as to the correctness of an interlocutory judgment, decree or
    order which "so affects the merits of the controversy that the matter
    ought, before further proceedings, to be determined by the appeals
    court."  [54-56]

PETITION filed in the Probate Court for the county of Mid-
dlesex on February 23, 1978.

The case was reported by *Martin,* J.

*George P. Jeffreys* for Evripides N. Koscotas.

*Robert L. Burke* for Cynthia A. Paquette.

KASS, J.  Upon report from a Probate Court judge pursu-
ant to G. L. c. 215, § 13, we are asked three questions
which, in light of *Lowell* v. *Kowalski,* 380 Mass. 663 (1980),
are susceptible of restatement as one, viz.: is an illegitimate
child the heir of his or her father in circumstances where the
father has not acknowledged the child as his in writing?
That question was left open in *Lowell.  Id.* at 670.

The instant case is before us on a statement of agreed facts, which we summarize. Stephen A. Karvelas died intestate on December 13, 1977, survived by two illegitimate children, Cynthia (the petitioner) and Steven G. Karvelas. Stephen A. Karvelas, the decedent, never intermarried (the word employed in G. L. c. 190, § 7) with the mother of Cynthia and Stephen G., and no adjudication of paternity occurred during the decedent's lifetime. However, "the decedent during his lifetime acknowledged Cynthia A. Paquette and Ste[v]en G. Karvelas as his children."[1] There are two petitions for administration of the estate of the decedent Stephen A. Karvelas. One was brought by Cynthia Paquette who claimed to be the daughter of Karvelas; the second was brought by Evripides N. Koscotas, who was his brother.

*Lowell* v. *Kowalski, supra,* held that an illegitimate child whose father acknowledged her as such is entitled to share in the distribution of his estate. That the decedent acknowledged Cynthia and Steven as his children was stipulated by the parties' statement of agreed facts and that agreement obviates any further inquiry by us for other evidence of acknowledgment.[2] Under the principles of *Lowell* v. *Kowalski,* Cynthia and Steven were, therefore, entitled to the status of next of kin of the decedent and Cynthia qualified for appointment as administratrix of her father's estate. See G. L. c. 193, § 1 (where there is no surviving spouse, administration of estate shall be granted to next of kin), and G. L. c. 190, § 4 (degrees of kinship).[3]

The elder Karvelas died some eleven months after the effective date of the Equal Rights Amendment (E.R.A.) to the Massachusetts Constitution,[4] upon which the *Lowell* deci-

---

[1] The quoted material is from the statement of agreed facts.

[2] For conduct which evidences acknowledgment of paternity, see *Houghton* v. *Dickinson,* 196 Mass. 389, 391-392 (1907).

[3] Children are of first degree, brothers of second degree. Lombard, Probate Law & Practice § 277, at 354 (1962).

[4] Article 106 of the Amendments to the Constitution of the Commonwealth.

sion rested. Koscotas has argued that *Lowell* worked a
change in the law and should not be applied to cases arising
out of deaths which occurred prior to the issuance of that
opinion. The *Lowell* case itself, however, dealt with a
death which had occurred prior to the court's decision and
the court made no effort to alter the usual impact which a
common law decision has on past events as well as future
events. The *Lowell* decision did not alter the law; it de-
clared the law as affected by the E.R.A. Accordingly, the
principles articulated in *Lowell* apply to the case at bar.[5]
Compare *West* v. *First Agricultural Bank,* 382 Mass. 534,
548-552 (1981), a decision dealing with the effect of the
E.R.A. on tenancies by the entirety which was expressly
made prospective so as not to unsettle vested rights. Subse-
quent to the proceedings in the Probate Court in this case,
§§ 5, 6, and 7 of G. L. c. 190 were rewritten by St. 1980,
c. 396, so as to harmonize the statutory scheme with the
E.R.A. and the views expressed in *Lowell.* The rights of il-
legitimate children of persons who die after the effective
date of the 1980 legislation will be governed by those
amendments.

It is not entirely clear upon what action in the Probate
Court the judge based his reservation and report of the case.
Chapter 215, § 13, as amended through St. 1975, c. 400,
§ 59, consists of two sentences.[6] The first sentence author-
izes a report of a case which has been "heard for final deter-
mination," in which event the judge may "reserve and re-
port the evidence and all questions of law therein for consid-
eration." That procedure is designed to bring the entire
case to the appellate court, as on appeal, so that a final
judgment may be entered. The judge should not select for

---

[5] In *Trimble* v. *Gordon,* 430 U.S. 762, 765-766 (1977), the United
States Supreme Court held an Illinois statute similar to G. L. c. 190, § 7
(prior to its amendment in 1980), unconstitutional on equal protection
grounds. That case was decided before the elder Karvelas died.

[6] As the case involves the administration of an estate, neither Mass.R.
Civ.P. 64, 365 Mass. 730 (1974), nor Mass.R.Dom.Rel.P. 64 governs the
report procedure. See Mass.R.Dom.Rel.P. 1.

report specific questions of law which may arise in a case if the resolution of those questions will not enable this court or the Supreme Judicial Court to enter a final judgment. *Dunlop* v. *Claussen,* 313 Mass. 715, 716-717 (1943). *Curran, petitioner,* 314 Mass. 91, 93-94 (1943). *O'Brien* v. *Dwight,* 363 Mass. 256, 274 (1973). *Matter of Jones,* 379 Mass. 826, 828 n.2 (1980). This is not to say, of course, that the judge may not identify the questions which trouble him, while reporting all questions of law in the case. Such a practice is helpful to the appellate court.

Under the second sentence of § 13, the probate judge may report cases in which an interlocutory judgment, decree or order has been made which, in the opinion of the judge, "so affects the merits of the controversy that the matter ought, before further proceedings, to be determined by the appeals court."

Because nothing in the record discloses whether the Probate Court judge had decided that Cynthia was qualified to be the administrator of the estate of her father and the record is barren of facts which would enable us so to decide, the case is not a proper one for report under the first sentence of § 13; i.e., we are in no position to order entry of a judgment.

If a judge makes a report under the second sentence of § 13, i.e., as to the correctness of an interlocutory judgment, decree or order, the report should identify the significant order he has in mind. This was not done in the report before us. From an examination of the docket we observe that the judge denied a motion by Koscotas (the brother) to strike Cynthia's appearance and to dismiss her petition. We deduce that it is the correctness of that action which the judge sought to bring before us. Since so little in the way of taking of evidence and action by the judge was necessary prior to deciding whether to appoint Cynthia and to dismiss Koscotas' petition, the case was less than apt for use of the report procedure on an interlocutory order. Treating the report as from the denial of Koscotas' motion, we answer that the motion was correctly denied because the elder

Karvelas had, as the parties agreed, acknowledged Cynthia and Steven, although not in writing, and Cynthia, therefore, could petition for administration of the decedent's estate.

The case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*