JOHN DOE[1] *vs.* RICHARD ROE.[1]

Middlesex.   January 20, 1987. — March 4, 1987.

Present: BROWN, CUTTER, & DREBEN, JJ.

*Constitutional Law,* Equal protection of laws. *Probate Court,* Jurisdiction, Illegitimate child. *Jurisdiction,* Probate Court. *Parent and Child,* Support of illegitimate child.

On appeal from the dismissal of a complaint filed in the Probate Court on behalf of a child born out of wedlock to obtain support from his biological father, asserting that the child, over eighteen years of age, living at home, attending college full time, and principally dependent on his mother for support, would have been entitled to such support under G. L. c. 208, § 28, if he had been born to parents married to each other, this court, stating that the equity jurisdiction of the Probate Court must be interpreted broadly enough to permit a child born out of wedlock to pursue remedies for unconstitutional discrimination against that child when no precisely applicable statutory remedy is available for his protection, remanded the case to the Probate Court with instructions for the court to order support for the child from the biological father, for the period between the date of his attaining age eighteen and the date when he attains age twenty-one, to the same extent as a child born to married parents would have been awarded support in like circumstances under c. 208, § 28. [592-595]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on December 13, 1985.

The case was heard by *Arthur G. Coffey,* J., on motions for summary judgment.

*Jon Laramore* for the plaintiff.

*Michael J. Duggan,* for the defendant, submitted a brief.

---

[1] The complaint was originally brought for the plaintiff (whom we shall call John Doe) by his mother (whom we shall call Cynthia Coe) against his father, whom we shall call Richard Roe. See the analogy of G. L. c. 209C, § 13.

CUTTER, J. John, who is now nineteen, is the son (born out of wedlock) of Richard Roe. Richard has been adjudicated in a District Court to be John's biological father. Richard ceased making court-ordered child support payments for John when the latter attained the age of eighteen in June, 1985. The District Court terminated Richard's legal obligation to pay support for John under G. L. c. 273, because under the then exising provisions of c. 273, a parent could be required to support a child only during that child's minority. This complaint for support for John was filed in a Probate Court on December 13, 1985, to obtain, under the general equity jurisdiction of that court, support from his biological father. It was asserted that John, over eighteen, living at home, attending school or college full time, and principally dependent on his mother for support, if he had been born to parents married to each other, would have been entitled to such support under G. L. c. 208, § 28. That section does not apply by any express terms to children born out of wedlock.

The record is clear (1) that Richard's paternity of John has been judicially established; (2) that John is living at home with his mother, Cynthia Coe; (3) that Cynthia's income is limited to Social Security disability benefits of $386 per month; (4) that John, as of September 1, 1985, was a full-time student at a community college; and (5) that his education expenses are being met by a combination of student loans, grants, and part-time employment. These facts are either shown by the pleadings or set out in a statement of evidence under Mass. R. A. P. 8(c), as appearing in 378 Mass. 933 (1979), approved by the trial judge. The trial judge granted Richard's motion for summary judgment on March 20, 1986, on the ground that Richard was entitled "as a matter of law" to dismissal of the complaint under c. 273.[2]

---

[2] This was prior to the enactment of St. 1986, c. 310, which contained (in § 16) a new chapter of the General Laws, c. 209C. Sections 3(b) and 20 of this new chapter give to the Probate and Family Court Department certain jurisdiction with respect to complaints concerning children born out of wedlock. Statute 1986, c. 310, § 17, also amends G. L. c. 215, § 4, to provide that "Probate Courts shall have exclusive original jurisdiction of . . . actions relative to paternity, support, and custody of

1. In behalf of John it correctly is argued that, if he had been born to parents joined in wedlock, he could have received an award of support under G. L. c. 208, § 28. That section, in its third sentence, expressly provides as a part of a statute dealing with support following a judgment of divorce, "The court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance" (as that sentence was inserted by St. 1975, c. 661, § 1). It is also correctly argued in John's behalf that no express provision of G. L. c. 273 gave John any claim against his biological father after John attained the age of eighteen in June, 1985, although up to that date John could have obtained support, at least indirectly, under c. 273, §§ 11-15, because it had already been adjudicated that Richard Roe was his father. See *Davis* v. *Misiano,* 373 Mass. 261, 263 (1977). See also *Gardner* v. *Rothman,* 370 Mass. 79, 80 (1976). See and compare *Kelsey* v. *Panarelli,* 5 Mass. App. Ct. 480, 481-483 (1977); *Simas* v. *Stupalski,* 19 Mass. App. Ct. 1000, 1001 (1985).

2. It now appears to be well established that discriminatory treatment (at least by statute) of children born out of wedlock, as compared with children born to parents married to each other, in matters of support, intestate succession, and remedies in domestic relations controversies, usually will result in an unconstitutional denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States.[3] The cases in the Supreme Court of the United States

---

minor children provided for in chapter two hundred and nine C and shall have jurisdiction concurrently with the district . . . court department[] of actions relative to paternity or support as provided in chapter" 209C. Further discussion of c. 209C will be found in part 4 of this opinion. Statute 1986, c. 310, contained an emergency preamble, and was approved on July 22, 1986. All but two sections (neither of which is relevant to this case or to *Roberts* v. *Noon, post* 596 [1987]), were by § 35 to "take effect upon passage."

[3] Particular situations (not existing in this case, however, largely because Richard has been adjudicated to be John's natural father) may justify application of a modified principle, especially to avoid fraud. See, e.g., the

have increasingly treated as unconstitutional discriminatory treatment (at least by statute) of children born out of wedlock. See, e.g., *Weber* v. *Aetna Cas. & Surety Co.,* 406 U.S. 164, 174-176 (1972, workers' compensation benefits); *Gomez* v. *Perez,* 409 U.S. 535, 536-538 (1973, discrimination in right to support by his father of a child born out of wedlock); *Trimble* v. *Gordon,* 430 U.S. 762, 768-776 (1977, discrimination in intestate succession); *United States* v. *Clark,* 445 U.S. 23, 32-38 (1980, possibly unconstitutional discrimination used as aid to adopting the least restrictive interpretation of statutory purpose); *Reed* v. *Campbell,* 476 U.S. 852, 856 (1986, facts did not preclude full application of the *Trimble* case *supra*). Compare the plurality decision in *Lalli* v. *Lalli,* 439 U.S. 259 (1978), as discussed in *Lowell* v. *Kowalski,* 380 Mass. 663, 666, 668 (1980).

3. We regard the Supreme Court cases just cited as showing that John constitutionally is entitled to the same type of support from his biological father, after attaining the age of eighteen and until he reaches age twenty-one, as a child of divorced parents would be entitled to receive in like circumstances under c. 208, § 28. The Massachusetts cases appear to reach (or point strongly to) the same result. See *Lowell* v. *Kowalski,* 380 Mass. at 665-670; *Normand* v. *Barkei,* 385 Mass. 851, 852-853 (1982). The latter case recognized that, where no precisely applicable statutory remedy was available to protect the interest of the biological father of a child born out of wedlock in visiting that child, the Probate Court could decide the issues under its general equity jurisdiction (G. L. c. 215, § 6). See also *Matter of Moe,* 385 Mass. 555, 560-563 (1982).

The doubts expressed in the *Normand* case, 385 Mass. at 852 n.1, about the denial by a State of a forum for a constitutionally based claim, have been resolved by Massachusetts cases in other fields. See, e.g., *Shoppers' World, Inc.* v. *Assessors of Framingham,* 348 Mass. 366, 376-378 (1965). There the Supreme Judicial Court construed a statutory administrative

discussion of various problems of proof of paternity in *Lowell* v. *Kowalski,* 380 Mass. 663, 668-670 (1980), and cases cited.

remedy (for relief from excessive taxation of real estate) broadly "enough to protect taxpayers' constitutional rights to extent required by the decisions of the Supreme Court of the United States." *Id.* at 376.[4] By like reasoning we conclude that the equity jurisdiction of the Probate Court must be interpreted broadly enough to permit a child born out of wedlock (or person acting for that child) to pursue remedies for unconstitutional discrimination against that child (as compared with the remedies available, in like circumstances, to a child born to married parents).

4. The Legislature has acted by St. 1986, c. 310, to deal with some of the problems of children born out of wedlock. As already pointed out, it has amended G. L. c. 215, § 4, in the manner set out in note 2, *supra.* It also (St. 1986, c. 310, § 16) has inserted a new chapter. G. L. c. 209C. Section 1 of the new chapter contains a comprehensive declaration of policy, in part set out in the margin,[5] which shows a clear inten-

---

[4] At 376 in n. 9, it was pointed out that "[r]eexamination of the scope of remedies is not unusual, and may be essential, to meet evolving constitutional interpretations. An example of this is the gradual and necessary expansion of the [then existing] statutory writ of error (G. L. c. 250, §§ 1, 9) as a postconviction remedy broad enough to deal with constitutional problems arising under [then] recent decisions of the Supreme Court of the United States. Compare *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 376, *S.C.* 272 Mass. 25, 28, with *Brown* v. *Commonwealth,* 335 Mass. 476, 479-480; *Sandrelli* v. *Commonwealth,* 342 Mass. 129, 141-143; and *Letters* v. *Commonwealth,* 346 Mass. 403." Chapter 250, §§ 1 and 9, have been repealed since the *Shoppers' World* case was decided, but see Mass. R. Crim. P. 30, 378 Mass. 900 (1979).

[5] Chapter 209C, § 1 reads in part (emphasis supplied):

"Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children. It is the purpose of this chapter to establish a means for such children either to be acknowledged by their parents voluntarily or, on complaint by one or the other of their parents or such other person or agency *as is authorized to file a complaint by section five,* to have an adjudication of their paternity, *to have an order for their support* and to have a declaration relative to their custody or visitation rights ordered by a court of competent jurisdiction. For the purpose of this chapter, the term "child born out of wedlock" shall refer to any child born to a man and woman who are not married to each other and shall include . . . a child born to parents who are not married to each other whose paternity has been adjudicated by a court of competent

tion to provide broad remedies for equal treatment for children born out of wedlock.

Chapter 209C, § 1, when read with §§ 3(*b*) and (*d*), 4, 5, and 9, and with G. L. c. 215, § 4 (as appearing after the revisions by St. 1986, c. 310) and § 6, creates a comprehensive statutory plan for the support and protection of children born out of wedlock. We perceive nothing in the 1986 statute which limits (or was intended to limit) the scope of the preexisting general equity jurisdiction of the Probate Courts under G. L. c. 215, § 6.

In view of what has been said, we need not consider whether and to what extent St. 1986, c. 310, was to have retroactive effect. John Doe was entitled, prior to the pertinent effective date of c. 310 (see § 35), to have his remedy in the Probate Court under c. 215, § 6. He is now entitled to proceed in the Probate Court under both §§ 4 and 6 of c. 215, as now appearing.

The judgment of dismissal is reversed. The case is remanded to the Probate and Family Court Department, Middlesex Division, for further consideration consistent with this opinion. John Doe is to be awarded support from Richard Roe, for the period between the date of his attaining age eighteen and the date when he attains twenty-one, to the same extent as a child born to married parents would have been awarded support (to be paid by his father) in like circumstances under G. L. c. 208, § 28.

*So ordered.*

---

jurisdiction, including an adjudication in a proceeding pursuant to this chapter or prior law. *Every person is responsible for the support of his child born out of wedlock from its birth up to the age of eighteen, or, where such child is domiciled in the home of a parent and principally dependent upon said parent for maintenance, to age twenty-one.* Each person charged with support under this section shall be required to furnish support according to his financial ability and earning capacity pursuant to the provisions of this chapter."