## NOREEN JUDITH HUNTER *vs.* NONA PORTER.[1]

No. 00-P-348.

Norfolk. March 15, 2002. - January 29, 2003.

Present: DUFFLY, KASS, & TRAINOR, JJ.

*Declaratory Relief. Paternity. Probate Court,* Paternity proceeding, Child born out of wedlock. *Devise and Legacy,* Child born out of wedlock. *Limitations, Statute of. Practice, Civil,* Declaratory proceeding, Statute of limitations.

In a proceeding for declaratory judgment in which the plaintiff sought an adjudication that she was the daughter of the defendant administratrix's decedent, the judge properly dismissed the complaint as not timely filed under G. L. c. 190, § 7, where, because the issue of paternity was contested, the plaintiff was bound either to deliver an adjudication of paternity or to commence an action to prove paternity within one year of the decedent's death, and had done neither. [236-239]

CIVIL ACTION commenced in the Norfolk Division of the Probate and Family Court Department on December 11, 1997.

A motion to dismiss was heard by *John M. Smoot,* J.

*Roberta Golden* for the plaintiff.

*John T. Daley* for the defendant.

DUFFLY, J. In a proceeding for declaratory judgment, Noreen Judith Hunter (Noreen) sought an adjudication that she was born out of wedlock to Joseph S. Hunter (Joseph) and Marian McKeever (Marian), thereby to establish her right to inherit from Joseph's estate. The plaintiff's complaint, filed nearly twenty months following Joseph's death, was dismissed as not having been timely filed as required by G. L. c. 190, § 7,[2] and

---

[1] As administratrix of the estate of Joseph S. Hunter.

[2] This section provides, in relevant part, as follows:

"If a decedent has acknowledged paternity of a person born out of wedlock or if during his lifetime or after his death a decedent has been

G. L. c. 197, § 9(*a*).[3] The former statute establishes procedures for a child born out of wedlock seeking to share in the assets of the estate of a father dying intestate; the latter statute imposes a one-year limitation period for bringing an action against an executor or administrator.

The plaintiff's appeal raises the question whether the one-year limitation period for bringing an action to establish paternity that is imposed through operation of G. L. c. 190, § 7, is inapplicable when the decedent has, by word or deed during his lifetime, acknowledged paternity of a person seeking to inherit from his estate.[4] We affirm the dismissal.

*Background.* We set out such facts in the plaintiff's pleading and affidavits which, if true, would take the case out of the statute of limitations. See *Howe* v. *Johnston,* 39 Mass. App. Ct.

---

adjudged to be the father of a person born out of wedlock that person is heir of his father . . . . A person may establish paternity if, within the period provided under section nine of chapter one hundred and ninety-seven for bringing actions against executors and administrators, such person either (a) delivers to the executor or administrator an authenticated copy of a judgment rendered by a court of competent jurisdiction during a decedent's lifetime adjudging the decedent to be the father of a person born out of wedlock, or (b) commences, in a court of competent jurisdiction, an action in which the executor or administrator is a named party and in which such paternity is ultimately proved."

[3]This section provides as follows:

"(*a*) Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate."

[4]Noreen further claims that, even if the one-year limitation period under G. L. c. 197, § 9(*a*), applies, her complaint is rendered timely by application of G. L. c. 260, § 32 (new action may be brought within one year of dismissal or "for any matter of form"), or by virtue of equitable tolling. Finally, she claims that G. L. c. 190, § 7, is unconstitutional. These arguments lack merit. In any event, we decline to "consider a claim that is asserted for the first time after judgment has been entered below." *R.W. Granger & Sons* v. *J & S Insulation, Inc.,* 435 Mass. 66, 73 (2001).

651, 655 (1996) (plaintiff has burden of proving facts which will take case out of statute of limitations).[5] To provide context, we also set forth certain uncontested background facts culled from the record and from *Keville* v. *McKeever*, 42 Mass. App. Ct. 140 (1997), our prior opinion in which these parties were also involved. That action, a contested conservatorship proceeding consolidated with Noreen's petition for permanent guardianship and other actions, involved a dispute over ownership of Joseph's assets between Marian, Noreen, and others on one side, and Joseph's daughter, Nona Porter, and others on the other.

In 1924, Joseph immigrated to the United States where, over the next sixty years, he amassed substantial assets. *Id.* at 141-142. Marian, Joseph's long-time bookkeeper, secretary, and, later, personal attendant, gave birth to Noreen on December 9, 1955.[6] At the time of Noreen's birth, Marian had been employed

---

[5]The defendant's motion to dismiss was based on the asserted failure of the plaintiff "to comply with the one year statute of limitations for creditors of an estate." Attached to the plaintiff's opposition were sixteen exhibits. Among them is a document purportedly signed by Joseph and notarized on July 31, 1980, stating that "Joseph Hunter . . . does hereby acknowledge that he is the true father of the female person born in Boston, Massachusetts, on December 9, 1955, whose birth record shows the name 'McKeever.' I further consent that the legal name of Noreen Judith McKeever be changed to Noreen Judith Hunter." Also attached is an affidavit of Hubert Yorra, in which the affiant states that he is an attorney admitted to practice in the Commonwealth, that he previously represented Joseph "in connection with various matters," and that in the course of his personal and professional relationship with Joseph he met Noreen "together with Mr. Hunter [who] stated to me on numerous occasions that Noreen was his daughter."

It has not been made to appear that these matters, which are outside the pleading, were excluded by the Probate Court judge. We therefore treat the motion as one for summary judgment, as provided by Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).

[6]Marian alleged that Noreen was Joseph's daughter, but that there was no adjudication of paternity. *Keville* v. *McKeever*, 42 Mass. App. Ct. at 144. We noted the trial judge's finding that there was no 'credible evidence' that Noreen was in fact Joseph's daughter. *Id.* at 144 n.6. Because it has not been made to appear that this issue was actually litigated and determined in the earlier proceedings, we place no reliance on that finding in reaching our present decision. See *Jarosz* v. *Palmer*, 436 Mass. 526, 530-531 (2002). Indeed, the Probate Court judge, on October 18, 1993, denied a postjudgment request to have a paternity test conducted, "without prejudice to renewal after the filing of an appropriate action."

for five years as Joseph's bookkeeper. Joseph was then married, and had been since 1928; he and his wife had two children, a son and Nona Porter. Joseph's wife died in 1982. Sometime in 1982, Joseph moved into one of his properties with Marian. Joseph died intestate on April 27, 1996; Nona Porter was appointed to administer Joseph's estate and, in that capacity, is the defendant in the matter now before us.

In our prior opinion, we chronicled Joseph's increasing dementia and the stripping of his assets by Marian, Noreen, and Marian's son, Frank. *Id.* at 144-148. We found no reason to disturb the judgment that, beginning in at least August, 1982, Joseph was incompetent and "that the McKeevers [Noreen, Marian and Frank] have no interest in Joseph's estate." *Id.* at 147, 155.[7] That conclusion, however, was not based upon the right of a child born out of wedlock to seek to inherit from her father's estate pursuant to G. L. c. 190, § 7, and is, therefore, not dispositive of the issues here on appeal.

As we have observed, Joseph died in April, 1996. Noreen's complaint was filed on December 11, 1997. In that complaint, Noreen alleges that she is the out of wedlock child of Marian and Joseph, and she asks that "the Court adjudicate the Plaintiff to be the daughter of Joseph S. Hunter for the purposes of establishing entitlement to his estate." Noreen's materials in opposition to the defendant's motion to dismiss contain documents supporting her assertion that Joseph acknowledged paternity of Noreen during his lifetime. See note 5, *supra.*[8]

*Discussion.* Under G. L. c. 190, § 7, the limitations period set out in G. L. c. 197, § 9, is made applicable to actions filed

[7]We also upheld the judgment that the McKeevers were liable to Joseph, individually, or jointly and severally, for various sums amounting to approximately $1.5 million dollars. *Keville* v. *McKeever*, 42 Mass. App. Ct. at 143.

[8]Noreen does not claim that Joseph's oral and written acknowledgment of his paternity constitutes a "voluntary acknowledgment of parentage" pursuant to G. L. c. 209C, § 11, that — if properly executed (in writing, jointly by the parents, acknowledged in the presence of a notary public), filed (with the registrar of vital records and statistics), and neither rescinded nor challenged as provided by the statute — "shall thereafter have the same force and effect as a judgment." G. L. c. 209C, § 11.

by a person born out of wedlock seeking to establish a right to inherit from her father. Thus, where paternity is contested, the action must be commenced within one year from the date of death of the deceased. See *Flannery* v. *Flannery*, 429 Mass. 55, 59 (1999) ("G. L. c. 197, § 9(*a*), bars the plaintiff's claim one year from the date of the decedent's death"); *Eresian* v. *Mattei*, 52 Mass. App. Ct. 16, 17 (2001) ("There is a short statute of limitations, G. L. c. 97, § 9(*a*), which requires creditors to bring an action against the executor or administrator within one year after the date of death of the deceased"). Because Noreen's complaint was filed nearly twenty months after the date of Joseph's death, it was properly dismissed.

We agree with Noreen that the second sentence of c. 190, § 7, provides an option, in addition to adjudication, by which an illegitimate child may establish paternity following the death of a putative father. That sentence states as follows: "If a decedent has acknowledged paternity of a person born out of wedlock or if during his lifetime or after his death a decedent has been adjudged to be the father of a person born out of wedlock that person is heir of his father." G. L. c. 190, § 7. We disagree, however, with Noreen's claim that because the administrator was on notice of the existence of evidence constituting Joseph's "acknowledgment" of paternity,[9] Noreen fulfilled the prerequisites to establishing paternity set forth in c. 190, § 7, and is entitled, without more, to share in Joseph's estate. Where the issue of paternity is contested, the additional requirement set forth in c. 190, § 7, applicable to the circumstances, namely, commencement of an action to establish paternity, must be satisfied. See, e.g., *Higgins* v. *Ripley*, 16 Mass. App. Ct. 928, 928 (1983); *Doe* v. *Roe*, 19 Mass. App. Ct. 270, 272 (1985).

When, in the context of claims to inherit, the issue of paternity is uncontested, no action need be commenced and paternity may be established by stipulation of the parties that during the decedent's lifetime he acknowledged that he was the father of the person claiming a right to inherit from his estate.

---

[9]Noreen claims that some of the documents attached to her opposition to the motion to dismiss, see note 5, *supra*, would have been available to Nona Porter in prior proceedings.

See *Lowell* v. *Kowalski*, 380 Mass. 663, 670 (1980) (where "it was established, based on a stipulation of the parties, that, on numerous occasions, the defendant's intestate acknowledged the paternity of the plaintiff orally and in writing").[10] See also *Paquette* v. *Koscotas*, 12 Mass. App. Ct. 52, 53 (1981) (parties' stipulation that decedent acknowledged paternity "obviates any further inquiry by us for other evidence of acknowledgment").

The court in *Lowell* identified three forms of evidence that could establish paternity in contested proceedings: "the father's written acknowledgment of his paternity (see for such an example, G. L. c. 273, § 15[11] . . .), his sworn testimony to the same effect, or an adjudication of paternity under G. L. c. 273." *Lowell* v. *Kowalski*, 380 Mass. at 670. The court left for later determination "the question whether, in a contested proceeding, proof of paternity may be made out in the absence of" the above described evidence. *Ibid.* We will assume for purposes of our discussion that the notarized statement, see note 5, *supra*, constitutes a "sworn statement" that would, upon admission in evidence and established to be the voluntary, knowing statement of the decedent, support an adjudication of paternity.

Here, because the issue of paternity was contested, the

[10]In *Lowell* v. *Kowalski*, *supra*, the court determined the intermarriage requirement in an earlier version of c. 190, § 7, to be unconstitutional. Under that version, an illegitimate child was permitted to inherit by intestacy from her father's estate only if her parents had intermarried, and the father had either acknowledged the child as his or had been adjudged to be the child's father in a proceeding under G. L. c. 273. The court recognized the difficulty in avoiding fraudulent claims of paternity "where the father is deceased . . . . Thus, because the possibility of fraud is usually greater with respect to claims against the estate of a deceased man than against the estate of a deceased woman, we recognize that the State has a compelling interest in imposing a stricter standard for establishing an illegitimate child's right to inherit from its father than from its mother." *Id.* at 669. At the same time, the court noted, "Where paternity is conceded, we see no justification for denying the right of a child to inherit form his or her natural father. The possibility of fraud is wholly absent." *Id.* at 670.

[11]General Laws c. 273, § 15, which imposes a duty of support upon parents of children born out of wedlock, provides that "a voluntary acknowledgment of parentage or an adjudication of paternity under [G. L. c. 209C] . . . shall be conclusive on all persons in proceedings under this section." As we observed at note 8, *supra*, the Legislature has prescribed in G. L. c. 209C, § 11, the form of acknowledgment that will operate as an adjudication of paternity.

plaintiff was bound under G. L. c. 190, § 7, either to deliver an adjudication of paternity, or to "commence[], in a court of competent jurisdiction, an action in which the executor or administrator is a named party and in which such paternity is ultimately proved." Delivery of the adjudication or commencement of the action must occur within the one-year period provided under G. L. c. 197, § 9. There was no adjudication of paternity, nor did the complainant launch an action within a year from the date of Joseph's death to prove he was her father.[12] The claim was properly dismissed as untimely.

Noreen also seeks to apply to this case the holding in *Commonwealth* v. *Gruttner*, 385 Mass. 474, 475 (1982), that "no time bar blocks the bringing of an action to adjudicate the paternity of an illegitimate child." That decision was specific to criminal nonsupport actions brought pursuant to G. L. c. 273, § 15, against living, putative fathers, and has no relevance to the circumstances of this case.

*Judgment affirmed.*

---

[12]We reject Noreen's claim, made without citation to relevant authority, that the requirement of commencing an action within one year was fulfilled upon the filing of her petition for permanent guardianship on May 24, 1991.