RICHARD JONES *vs*. MARY ROE.[1]

No. 91-P-1390.

Hampshire. May 13, 1992. - December 7, 1992.

Present: DREBEN, SMITH, & GREENBERG, JJ.

*Name. Parent and Child*, Name of child.

Discussion of the standard to be applied in resolving a dispute as to the surname of a child whose parents have not married. [662-664]

In a proceeding by the father of a child born out of wedlock, a probate judge's order changing the child's surname from that of the mother to that of the father was vacated on appeal, where this court concluded that the father had not carried his burden of coming forward at the hearing with evidence that the change of name would be in the child's best interests, and where the record indicated that the judge had not given appropriate deference to the interests of the child. [664-665]

PETITION filed in the Hampshire Division of the Probate and Family Court Department on October 9, 1990.

The case was heard by *Marie E. Lyons*, J.

*Sarah Wunsch (William Newman* with her) for the mother.

*Susan C. Phillips* for the father.

*Jeri B. Zeder & Jennifer Honig*, for Women's Bar Association of Massachusetts, amicus curiae, submitted a brief.

GREENBERG, J. As part of his effort to gain recognition of his paternity, Richard Jones asked a probate judge to change the surname of his infant daughter from the mother's to his own. After a hearing on his petition, the judge ordered that the child bear the paternal surname.[2] The mother's appeal

---

[1]We employ pseudonyms to protect the privacy interests of the child. We also acknowledge the brief of the Women's Bar Association in support of the mother's position in this case.

[2]The petition was brought pursuant to G. L. c. 210, § 12, as appearing in St. 1977, c. 869, § 3, which provides: "A petition for the change of

followed and raises questions about whether the judge considered the proper legal standard and whether there was sufficient evidence to support the order.

If, as here occurred, the child's last name is altered, the mother argues that such a revision must be supported by evidence that it was in the child's best interests, and lacking this, the order allowing the petition may not stand.

We sketch the background. The mother welcomed the birth of her daughter, Meredith, on March 4, 1990. Meredith's father has never been married to her mother. From birth, Meredith has lived with her mother and a half-sister — the sole offspring of the mother's prior marriage. The mother was divorced in July, 1986, and retained the surname of her former husband as her own. She selected the name so that it would match that of Meredith's sister.[3] On May 15, 1990, about two months after Meredith's birth, Richard brought an action seeking a declaration that he was the child's father. A judgment to that effect was entered. The judgment also provided that Richard pay support for his daughter and that Richard have joint legal custody of Meredith with the mother, the latter having physical custody. About five months later, Richard filed the change-of-name petition which resulted in this appeal.

Throughout the hearing, the judge indulged a presumption of patronymic naming of children. The judge's other comments offered during the trial demonstrated her agreement with the father's assumption that, in general, a child born

name of a person may be heard by the probate court in the county where the petitioner resides. The change of name of a person shall be granted unless such change is inconsistent with public interests."

[3] In the absence of objection from the putative father — and there was none — the mother has the right to control the initial surname of her child born out of wedlock. *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass. 178, 191 (1977) (also recognizing the mother's right to custody and duty to support her illegitimate child as a natural guardian). Nothing in the record reflects that the father objected to the child's name at birth. Thus, the finding of lack of consultation with the father should have had no influence on the judge's ultimate decision to allow a change of the child's surname. The mother was clearly entitled to that name. *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass. at 188.

out of wedlock should bear the last name of its father so long as the father has acknowledged paternity, contributed support, and visited with the child.

The judge noted in her limited findings that Richard complied with the support and visitation arrangements and applied himself with diligence to his work and continuing education. Those findings did no more than focus on his compliance with his parental obligations.

The judge further found that the mother named Meredith without consulting with Richard and that "the surname . . . is the same name of the mother's former husband, whom she divorced some years prior to the minor child's birth." During the course of the hearing — in at least eight instances — the judge observed that the name the mother had chosen at the time of her divorce — and had given to Meredith — was not really her own, but rather the name of her former husband. She also used the occasion to point out that the mother was a "very attractive lady" and was likely to marry again.

1. *The Standard.*

In spite of the term "public interests" contained in G. L. c. 210, § 12 (1990 ed.), a statute which generally governs petitions by adults or entire families to change their names, see, e.g., *Petition of Merolevitz*, 320 Mass. 448 (1946); *Petition of Buyarsky*, 322 Mass. 335 (1948), that language is not a substitute for the standard applicable to contested petitions for the change of childrens' names, *Petition of Two Minors for Change of Name*, 25 Mass. App. Ct. 941 (1988) ("best interests of child" standard has not been displaced by the 1977 amendment to G. L. c. 210, § 12). Further it is settled that findings in litigation between former spouses which involve the change of their childrens' surnames must focus on the best interests of the child. *Mark* v. *Kahn*, 333 Mass. 521 (1956). *Gardner* v. *Rothman*, 370 Mass. 79, 81 (1976). *Fuss* v. *Fuss* (No. 1), 372 Mass. 64, 69 (1977). The same criterion should apply to a ruling which, as here, alters the name of a child born out of wedlock.

We have found no case in Massachusetts which addresses this precise point but other courts have made no distinction.

See *Doe* v. *Dunning*, 87 Wash. 2d 50 (1976); *Bobo* v. *Jewell*, 38 Ohio St. 3d 330 (1988); *In re Petition of D.K.W.* v. *J.L.B.*, 807 P.2d 1222 (Colo. Ct. App. 1990). In other contexts we have been inclined to relieve children of the stigma traditionally attached to birth out of wedlock. See *Lowell* v. *Kowalski*, 380 Mass. 663 (1980) (where paternity is conceded, there is no justification for denying the right of a child born out of wedlock to inherit from his father); *Doe* v. *Roe*, 23 Mass. App. Ct. 590 (1987) (child born out of wedlock has equal protection right to receive support from the person adjudicated to be his father as a child of divorced parents would be entitled to receive under like circumstances). We perceive no reason not to follow that course here. In resolving a dispute as to the surname of a child whose parents have not married, a court should not attribute greater weight to the father's interest in having the child bear the paternal surname than to the mother's interest in having the child bear her name.

In the past the decisional law tended to protect the paternal surname. *Lassiter-Geers* v. *Reichenbach*, 303 Md. 88 (1985), cert. denied, 474 U.S. 1019 (1985), and cases cited. The current trend of the cases is that the right of the father to have the child bear his name is no greater than that of the mother to have the child bear her name. *In re Rossell*, 196 N.J. Super. 109 (Law Div. 1984). See also *State ex rel. Spence-Chapin Servs. to Families & Children* v. *Tedeno*, 101 Misc. 2d 485 (N.Y. Sup. Ct. 1979) (child permitted to maintain mother's surname where mother had custody of child, would be primary caretaking figure for child, and would make major decisions for her). Cf. *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass. at 185 (1977) ("important changes in popular and legal thinking suggest that ancient canards about the proper role of women have no place in the law"), quoting from *Surabian* v. *Surabian*, 362 Mass. 342, 348 n.7 (1972). Therefore, this principle of equality should be a component of the decisional process when considering the pivotal factors in the application of the test.

Those further considerations include the effect of the change of the child's surname on the preservation and development of the child's relationship with each parent and other siblings; the length of time the child has utilized a given name; the age of the child as it may relate to his or her identification with the surname; and the difficulties and embarrassment that the child may experience from bearing the present or proposed surname. *Bobo* v. *Jewell, supra* at 335. *In re Marriage of Schiffman*, 28 Cal. 3d 640 (1980) (discussing several factors to apply).

2. *Application of the Standard.*

The judge should have outlined the best interests test as the analytical framework for her findings of fact and rulings of law. There was considerable argument about that topic by counsel during the trial. However, it is evident from our review of the record that the judge may not have focused on the proper aspects of the test, and was, in all events, plainly wrong in her ultimate conclusion. As we mentioned earlier in this opinion, the judge's assumption that the mother's future marriage prospects would diminish her attachment to her chosen surname was completely unwarranted. The judge should not have disregarded the mother's cogent reason offered in support of the best interests of her child for the use of the mother's surname — namely the consideration that both children be spared, during their formative years, the embarrassment and difficulty associated with having different surnames.

In the circumstances presented here, we hold that there is no presumption favoring the father's right to have his child bear his name solely because he provides financial support and recognizes the child as his own. More precisely, nowhere in the father's account of his own position did he express any interest of his child which would be furthered by the change of name. He testified that his daughter "should have her father's name" and that she "deserves her father's name." On this record we hold that Richard failed to shoulder his burden of coming forward with evidence that the name change requested would be in Meredith's best interests.

We are of opinion that the interests of the child were not given appropriate deference by the judge. There has been no showing that the emotional bond between the father and daughter will be weakened if the child maintains her mother's surname. Unlike the situations in *Mark* v. *Kahn*, 333 Mass. at 522, and *Petition of Two Minors for Change of Name*, 25 Mass. App. Ct. at 941, Meredith was originally given the maternal surname, and there has been no showing that the mother is attempting to "weaken the bonds between father and child." Here the parents have joint legal custody which should promote the tie between father and daughter. Also, Richard testified that his infant daughter recognizes him and seems to enjoy his presence. As Meredith is too young to have achieved any significant identification with her last name, it seems unlikely that the mother's choice adversely impacts on her present relationship with her father.

Finally, the other members of Meredith's household — her half-sister and her mother — bear the mother's surname. The change sought could well subject her to embarrassment or confusion at school and require at least some awkward explanation to her peers.

Review of all the relevant circumstances presented at the hearing convinces us that Richard has failed to establish that the change he sought is in the best interests of Meredith. In the absence of such proof the judge's decision may not stand. Accordingly, the order granting a change of name must be reversed.

*So ordered.*