MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 5
Docket:        Aro-24-108
On Briefs:     October 30, 2024
Decided:       January 23, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, and DOUGLAS, JJ.

ANDREW M. LANDEEN

v.

ASHLEY BURCH

CONNORS, J.

[¶1]  In February 2024, the District Court (Caribou, *Linthicum, J.*) entered a judgment determining the parties' parental rights and responsibilities concerning their child.  *See* 19-A M.R.S. § 1653 (2024).[1]  Ashley Burch, the mother, appeals from that part of the judgment granting the request of the father, Andrew M. Landeen, to change their child's name.  Landeen cross-appeals, contending that the court's award of parental rights and responsibilities constituted an abuse of the court's discretion.  We vacate that portion of the judgment relating to the requested name change and affirm the remainder of the judgment.

---

[1]  A subsequent technical amendment to the statute,  P.L. 2023, ch. 646, § C-5 (emergency, effective April 22, 2024), has no effect on this appeal.

## I.  BACKGROUND

[¶2]  The parties, former romantic partners who never married, are the parents of a two-year-old child.  At the time the child was born, paternity had not been established and the parties were no longer romantically involved.  Burch gave the child her last name.

[¶3]  In April 2022, Landeen filed in the District Court a complaint to determine parental rights and responsibilities, asking, inter alia, that the court change the child's last name.  The totality of his explanation in his complaint as to why he sought the name change was as follows:

> I would like my son to have my last name.  It is how it has always been done for generations in my family.  As a farming family, Landeen Farms, [child's first name], if interested can someday take over the business.  Children have always had the Father's last name.  His name should be [recites the child's first and middle name] Landeen.

[¶4] The court held an evidentiary hearing in January 2024.  No evidence was proffered on the name-change issue.

[¶5]  In its judgment, the court "allocate[d] parental rights and responsibilities, including primary physical residence[,] to [Burch], with visitation to [Landeen]."[2]  The court changed the child's last name to "Landeen"

---

[2]  The court also ordered Landeen to pay a child support arrearage and $3,500 toward Burch's attorney fees.  Those provisions of the order are not at issue on appeal.

without comment and without making any specific findings explaining its decision. Burch timely appealed, and Landeen cross-appealed.

## II. DISCUSSION

### A. Except as to the requested name change, the record supports the court's allocation of parental rights.

[¶6] "We review [the court's] factual findings for clear error and the conclusion regarding the child's best interest for an abuse of discretion." *Proctor v. Childs*, 2023 ME 6, ¶ 6, 288 A.3d 815.

[¶7] The touchstone for the allocation of parental rights is the best interest of the child. *See* 19-A M.R.S. § 1653(3). In reaching its conclusion as to the appropriate allocation of parental rights and responsibilities, the court here recited the relevant statutory factors examined in making that best interest determination, which include, inter alia, the ability of the parents to cooperate and the emotional and physical safety of the child. *Id.*

[¶8] Although the court found that it was in the child's best interest for visits with Landeen to continue, the court noted:

> [Landeen's] anger at [Burch] is consistent and pervasive and has not diminished over time. He has shown little capacity or intention to cooperate or to learn to cooperate with [Burch] in the care of their child, or to learn methods for resolving disputes with her.

This anger was reflected, inter alia, in a "barrage of angry, argumentative, and demanding emails" Landeen sent to Burch after he began representing himself, which the court accurately concluded "exceeded the bounds of what was acceptable and instead fostered a hostile environment." As the court stated in response to Landeen's explanation that his behavior was caused by frustration: "There is always going to be frustration when co-parenting, but to be an adequate parent, the parties must be able to manage that frustration appropriately in the best interest of the child. Plaintiff has not demonstrated an ability to do that."[3] These findings and conclusions are supported in the record, and we affirm that allocation.[4]

---

[3] Landeen's anger management issues after the child's birth were presaged pre-birth, as reflected by the court's supported findings:

> Ashley separated from Andrew after an incident during the summer of 2021 when she was pregnant. Andrew returned home drunk and very angry. He scared Ashley by yelling at her, throwing the cat tree, and grabbing [Burch's] three-year-old [child's] plate from him and screaming at them to get out of his house. Andrew apologized the next day saying that he had too much to drink. After Ashley left and for the next few months, Andrew inundated Ashley with profane and abusive texts and emails berating and disparaging her. Sometimes he told her he loved her then he launched into a tirade about what a horrible human being she is. She asked him to cease but he continued. As a result, Ashley generally did not involve Andrew in anything related to [their child's] birth.

[4] Landeen argues that the allocation ordered by the court "effectively order[ed] sole parental rights to [Burch]" given that the judgment states that "[a]ll parental rights and responsibilities concerning the child are allocated to [Burch]." As the court explained, its award differed from the "exclusive" scope of an award of sole parental rights "with respect to all aspects of a child's welfare," *see* 19-A M.R.S. § 1501(6) (2024), in that Landeen was allocated the right to be notified "in writing of all major decisions concerning the child" and the right to court-ordered visitation. *See* 19-A M.R.S. § 1501(1) (2024) (stating that allocated rights may include "parent-child contact" and that "[a]

## B.  The record does not support the requested name change.

[¶9]  Burch challenges that part of the judgment changing the child's last name to "Landeen."  The statute governing name changes provides that the party seeking the name change must show "good cause" for the change.  *See* 18-C M.R.S. § 1-701(1)(C), (2-B)(B) (2024); *see also* 19-A M.R.S. § 1653(2)(F) (noting that in a proceeding to allocate parental rights and responsibilities a court may order a minor's name change pursuant to 18-C M.R.S. § 1-701).  Section 1-701(2-B)(B) provides:

> In the event that not all parties agree to the name change, the court shall consider the following factors to assess whether the request or petition is in the best interest of the minor:
>
> (1) The minor's expressed preference, if the minor is of sufficient age and maturity to articulate a basis for preferring a particular name;
>
> (2) If the minor is 14 years of age or older, whether the minor consents or objects to the name change petition;
>
> (3) The extent to which the minor uses a particular name;
>
> (4) Whether the minor's name is different from any of the minor's siblings and the degree to which the minor associates and identifies with siblings on any side of the minor's family;
>
> (5) The difficulties, harassment or embarrassment that the minor may experience by bearing the current or proposed name; and

---

parent allocated responsibility for a certain aspect of a child's welfare may be required to inform the other parent of major changes in that aspect").

(6) Any other factor the court considers relevant to the minor's best interests, including the factors outlined in Title 19-A, section 1653, subsection 3.

If the court finds that the name change is in the best interest of the minor by a preponderance of the evidence, the court shall change the minor's name.

[¶10]  None of the factors specified in subsections (1) to (5) support the requested name change.  *Id.*  No evidence regarding any potentially relevant unspecified factor was submitted to the court.

[¶11]  In *In re Perry*, 2004 ME 46, ¶¶ 1, 3, 845 A.2d 1153, a father petitioned to change the name of his child, contrary to the mother's position. The relevant statute provided that a minor's "legal custodian" could petition for the change.  *Id*. ¶ 4; *see* 18-A M.R.S.A. § 1-701(a) (Supp. 2003).[5]  Affirming the Probate Court, we ruled that the father could not unilaterally seek the name change, citing 19-A M.R.S.A. § 1651 (1998), which provided and still provides that "[n]either parent has any rights paramount to the rights of the other with reference to any matter affecting their children."  *In re Perry*, 2004 ME 46, ¶ 5, 845 A.2d 1153.  Not only does section 1651 indicate that no parent is given

---

[5]  Title 18-A M.R.S.A. § 1-701 was repealed and replaced with 18-C M.R.S. § 1-701 by P.L. 2017, ch. 402, §§ A-1, A-2 (effective Aug. 1, 2018) (codified at 18-C M.R.S. § 1-701 (2024)), and the replacement statute has since been amended, most recently by P.L. 2023, ch. 560, § A-1 (emergency, effective March 25, 2024) (codified at 18-C M.R.S. § 1-701 (2024)).

preferential naming rights, but the very limited decision-making involvement given to Landeen here would appear to be a factor weighing against the name change under 18-C M.R.S. § 1-701(2-B)(B)(6). *See* 19-A M.R.S. § 1651 (2024).

[¶12] A bare desire of a father—or mother—asserted in a complaint to change the existing surname of a child, over the objection of the other parent, is not a factor reflected in the statutory scheme. *See* 18-C M.R.S. § 1-701(2-B)(B). Nor does an allusion to tradition support changing a minor's name from his mother's surname to his father's. *See In re Marriage of Schiffman*, 620 P.2d 579, 580, 583 (Cal. 1980) (abolishing a common law rule giving the father, as opposed to the mother, a primary right to have the child bear his surname, with the sole consideration going forward to be the child's best interest); *Hamby v. Jacobson*, 769 P.2d 273, 277 (Utah Ct. App. 1989) ("[M]ost recent court decisions have both rejected the notion that there is a preference for the paternal name and failed to adopt a preference for custodial parent choice, preferring to follow the rule that a name change request should be granted only if the court finds the name change is in the best interests of the child." (citing decisions from Arizona, California, Colorado, Illinois, Minnesota, Ohio, and Washington)); *Hazel v. Wells*, 918 S.W.2d 742, 744 (Ky. Ct. App. 1996) (stating that "[t]he father has no greater right than the mother to have a child

bear his surname" (quotation marks omitted)); *Jones v. Roe*, 604 N.E.2d 45, 47 (Mass. App. Ct. 1992) ("In resolving a dispute as to the surname of a child whose parents have not married, a court should not attribute greater weight to the father's interest in having the child bear the paternal surname than to the mother's interest in having the child bear her name."); *Sec'y of the Commonwealth v. City Clerk,* 366 N.E.2d 717, 723 (Mass. 1977) ("Important changes in popular and legal thinking suggest that ancient canards about the proper role of wom[e]n have no place in the law."); *State ex rel. Connor H. v. Blake G.*, 856 N.W.2d 295, 300–01 (Neb. 2014) ("We conclude that in Nebraska, there is no preference for a surname—paternal or maternal—in name change cases; rather, the child's best interests is the sole consideration." (footnote omitted)); *Petit v. Adrianzen*, 392 P.3d 630, 632 (Nev. 2017) ("Neither parent should automatically have an advantage in determining a child's surname at birth. Rather, the sole concern should be the best interests of the child."); *Gubernat v. Deremer*, 657 A.2d 856, 857–58 (N.J. 1995) (rejecting the "presumption" that children must bear their fathers' surnames); *Bobo v. Jewell*, 528 N.E.2d 180, 184–85 (Ohio 1988) ("We caution the courts . . . to refrain from defining the best-interest-of-the-child test as purporting to give primary or greater weight to the father's interest in having the child bear the paternal

surname. While it may be a custom to name a child after the father, giving greater weight to the father's interest fails to consider that, where the parents have never been married, the mother has at least an equal interest in having the child bear the maternal surname. In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years." (footnote omitted)); *Keegan v. Gudahl*, 525 N.W.2d 695, 699 (S.D. 1994) (holding that the trial court "erred by deferring to the custom of giving a child the father's surname" and explaining that, instead, "the court should have been guided by the best interest of the child").

[¶13] In sum, parents share equal rights to name their child; to support a name change, the parent seeking the change bears the burden of persuasion to show good cause; and the touchstone is always and exclusively the best interest of the child. Given this record, where nothing establishes that the court made a supported, statutorily required "find[ing] that the name change is in the best interest of the minor by a preponderance of the evidence," 18-C M.R.S. § 1-701(2-B)(B), particularly in the face of evidence supporting a contrary

finding, we conclude that the court abused its discretion in changing the child's name.  *See Proctor*, 2023 ME 6, ¶ 6, 288 A.3d 815.[6]

The entry is:

> Portion of judgment changing the child's name vacated.  Judgment otherwise affirmed.

---

Jefferson T. Ashby, Esq., Ashby Law Office, Presque Isle, for appellant Ashley Burch

Tyler C. Hadyniak, Esq., Mailloux and Marden, P.A., Belfast, for cross-appellant Andrew M. Landeen

Caribou District Court docket number FM-2022-15

---

[6] The complaint itself might liberally be read as including a claim that the name change was sought in part based on an economic concern relating to the continuation of and child's participation in a family business.  While such a basis is not set forth as a relevant specified factor in section 1-701, we leave for another day whether such an assertion, supported by evidence, could be deemed a relevant unspecified factor under section 1-701(2-B)(B)(6).  Here, however, no evidence was offered to support the claim.