NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-562

D.B.P.

vs.

A.L.B.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this paternity suit, brought by the plaintiff father to establish his paternity and paternal rights, the only issue before us is whether the trial judge erred in ordering that the name of the parties' child be changed so that the child would have the father's last name, rather than the mother's.  For the reasons set forth below, we conclude that the judge did err, and accordingly reverse the portion of the judgment that ordered the change of the child's name.

Background.  The child was born in January of 2020.  The defendant, A.L.B., is the mother.  At the time the child was born, A.L.B. was married to C.B. (husband); the two had been married since 2011, at which time A.L.B. took the husband's last

name.  The child's birth certificate lists C.B. as her father, and the child's last name as that of A.L.B. and C.B.  The child has been in A.L.B.'s custody since birth, and has lived in the home of A.L.B. and C.B.  Since the child was born, A.L.B. and C.B. have had two children, one in 2022 and one in 2024.  A.L.B., C.B., and the three children live together.

For approximately four years, from 2015 to 2019, the mother had an affair with the father, D.B.P.  The father did not know the mother was married until around the time the affair ended in 2019.  The father learned of the child within months of the birth, and initiated this paternity proceeding in June 2020.  A.L.B. and C.B. denied the father's paternity until after his paternity was established by deoxyribonucleic acid (DNA) testing, around August of 2020.  A temporary order in July of 2021 adjudicated the father's paternity and provided that "[t]he child's birth certificate shall be amended to reflect that [D.B.P.] is the biological father of the child."

Trial occurred in January of 2024.  As to the issue of the name change, the father testified as follows:

Q.:  "Why is it important for . . . [the child] to have your last name?"

A.:  "She can be like every or 99.9 percent of the children out there to have their real father's last name."

The mother's testimony also addressed the issue:

2

Q.: "why are you asking the Court to [keep the child's name as the same as the mother's last name]?"

A.: "Because she's four years old. She's had that name her whole life. She knows what her name is. She can spell it. She can write it. She can say it. She's has -- she's going to have two siblings now with the same name. She's going to be attending school with those siblings, and she's only two years apart. And it's our family name. She's bonded by that name. She's had it her life. It's what she knows, she's aware of."

The judge entered a judgment docketed in April of 2024 that awarded physical custody to the mother and joint legal custody to mother and father, and that addressed several other topics, including parenting time and child support. As to the child's last name, the judgment stated that "[t]he child's last name shall be changed to [the father's last name] forthwith." The judge stated her rationale as follows:

"ii. The court finds that it is in the child's best interest that she have the last name of her Father, not her Mother's husband's last name. Although she has Mother's current last name there is no request for the child to be given Mother's maiden name [nor] has either party requested a hyphenated name which the court would have considered.

"jj. Since Mother assigned [the child] the last name [of the mother and her husband] it has been determined that [D.B.P.] is the child's biological father, Father has developed a relationship and a parenting scheduled [sic] with the child."

The mother appealed from the judgment, identifying the sole issue on appeal as the name change. The mother did not seek a stay of the name change in the trial court until August 2024, almost five months after judgment entered. The stay was denied,

3

as was relief from a single justice of this court.  After argument before this panel, we entered an interim order reversing so much of the judgment as ordered the child's name changed, stating that our opinion would follow in due course.

Discussion.  There are several decisions of this court that address the issue of when it is appropriate to change a child's surname, in the context of paternity proceedings.  Of particular note, at least three of those cases reversed or vacated trial court judgments that changed a child's name to the surname of the father.  Gomes v. Candido, 99 Mass. App. Ct. 825, 833 (2021); Richards v. Mason, 54 Mass. App. Ct. 568, 572 (2002); Jones v. Roe, 33 Mass. App. Ct. 660, 665 (1992).  See Cormier v. Quist, 77 Mass. App. Ct. 914, 916 (2010).  Certain principles can be distilled from the cases:  First, the basic touchstone, or standard, is the best interests of the child.  Jones, supra at 662.  The relative behavior of the parents may be relevant, but only as it bears on the child's long-term best interests. See Petition of Two Minors for Change of Name, 65 Mass. App. Ct. 850, 858 (2006).  Second, there is no general presumption in favor of the father's surname:  "a court should not attribute greater weight to the father's interest in having the child bear the paternal surname than to the mother's interest in having the child bear her name."  Jones, supra at 663.  Third, which parent

4

has physical custody is a relevant consideration, although not conclusive (or even presumptive); "[a] decision to change a child's surname is a significant life decision; in making such a decision in the child's best interests, the allocation of custodial responsibility should at least be considered." Cormier, supra. Finally, the party seeking the name change -- here, the father -- bears the burden of proof. See Gomes, supra at 829.

The case law identifies other factors to be considered as well. In the lead case, Jones, the trial judge had ordered a child's surname changed from the mother's to that of the father. Jones, 33 Mass. App. Ct. at 660. The mother and the father had never been married, the child had lived with the mother since birth, and the child had a half-sister who also bore the mother's surname. Id. at 661. This court reversed the judgment changing the child's name. Id. at 665. In addition to discussing some of the basic principles mentioned above, the court identified "further considerations":

> "[T]he effect of the change of the child's surname on the preservation and development of the child's relationship with each parent and other siblings; the length of time the child has utilized a given name; the age of the child as it may relate to his or her identification with the surname; and the difficulties and embarrassment that the child may experience from bearing the present or proposed surname." Id. at 664.

This court then discussed the above factors at some length. In reversing the name change, a key consideration in Jones was that the child was part of a family, and that she had the same given surname as her mother and sister. Jones, 33 Mass. App. Ct. at 664-665. We said,

> "The judge should not have disregarded the mother's cogent reason offered in support of the best interests of her child for the use of the mother's surname -- namely the consideration that both children be spared, during their formative years, the embarrassment and difficulty associated with having different surnames." Id. at 664.

We reached a similar result more recently in Gomes, 99 Mass. App. Ct. at 825. In that case, as in Jones, the children at issue (twins) had been given the same surname as the mother; the trial judge ordered the name changed to the father's; and this court reversed. While the facts in Gomes differed in material aspects from Jones -- in particular, in Gomes the twins had three half-siblings in the household, and those siblings did not all share the same last name as the mother -- this court nevertheless held that the judge erred in ordering the name change. Gomes, supra at 825-826. The Gomes court concluded that the judge had failed to articulate why the name change was in the children's best interests. Id. at 830. In considering the various factors discussed above, this court emphasized, among other things, that the mother had physical custody, that the children had the mother's surname since birth, and that "in

6

changing the twins' surname, the twins would no longer share a surname with anyone in their household."  Id. at 830-831.

The above principles dictate that the name change ordered in this case must also be reversed.  As indicated, the touchstone is the best interests of the child, and as in Gomes, the judge's findings here do not provide an appropriate legal basis for concluding that the name change is in the child's best interests.  Gomes, 99 Mass. App. Ct. at 830-833.  The child has had her current name since birth.  The mother has physical custody, meaning that the child spends the bulk of her time in a family of five, including two younger siblings, all the rest of whom have the same last name.  In ordering the name change the judge did not address the several considerations set forth in the case law.  In particular she did not address the "difficulties and embarrassment" the child might face from being the only member of her family with a different last name, particularly once the child is going to the same school as her younger half-siblings.  See Jones, 33 Mass. App. Ct. at 664.  This consideration was important in both Jones and Gomes, and we consider it important here as well.  See Gomes, supra at 831; Jones, supra at 665.

7

The judge's findings do not identify any other consideration that would support the result she reached.[1]  While the father has developed a relationship with the child and has a court-ordered parenting schedule, our cases specifically reject the notion that "a father's 'compliance with his parental obligations'" should justify a name change.  Cormier, 77 Mass. App. Ct. at 915, quoting Jones, 33 Mass. App. Ct. at 662.  Both parents have such obligations, and the law expects that they will be met.  The judgment establishes significant parenting time for the father and acknowledges, to his credit, that the father has established a bond with the child.  The establishment of such a bond is not in itself a reason to change the child's last name under the circumstances.[2]

Conclusion.  For the reasons above, we issued an order on January 10, 2025, reversing so much of the judgment as ordered

---

[1] The other considerations identified in Jones, which the judge did not address, do not point clearly to a particular result.  The fact that the child is young, and thus does not now have the same identification with a surname that an older child might have, is not an important factor.  See Gomes, 99 Mass. App. Ct. at 831.  The judge did not make findings that the name change would positively affect the child's relationship with her father, and in any event, we do not see how a name change could positively affect her relationship with her younger siblings.

[2] There will undoubtedly be circumstances where changing a child's name to the father's will be appropriate, and we do not suggest otherwise.  The facts and findings in this case, however, do not support such a change.

8

the name change.  In all other respects, the judgment is affirmed.

<u>So ordered</u>.

By the Court (Englander,
  Hodgens & Smyth, JJ.[3]),

*Paul Little*

Clerk

Entered:  February 4, 2025.

---

[3] The panelists are listed in order of seniority.

9